IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MICHAEL PRATT-EL, | * | |
| Plaintiff, | * | |
| v | * | Civil Action No. SAG-20-3754 |
| ALLEN GANG, *Warden*, CORIZON, | * | |
| WARDEN CLEVELAND FRIDAY, and NAZNIN ESPHANI, M.D., | * | |
| | * | |
| Defendants. | | |

\*\*\*

## MEMORANDUM OPINION

Plaintiff Michael Pratt-El filed this civil rights action alleging that Defendants Corizon, Dr. Naznin Esphani, and Wardens Allen Gang and Cleveland Friday failed to provide him with adequate medical care at Jessup Correctional Institution ("JCI"), where he is incarcerated. ECF Nos. 1, 5. Defendants have moved to dismiss or, alternatively, for summary judgment to be granted in their favor. ECF Nos. 28, 31. Pratt-El was given an opportunity to respond to each motion and has failed to do so. ECF Nos. 32, 33. The Court finds that a hearing is not necessary. *See* Local Rule 105.6 (D. Md. 2021). For the reasons explained below, the Court will grant Defendants' Motions.

**Background**

Pratt-El states that on several occasions to include May 20, 2020, May 22, 2020, June 3, 2020, June 25, 2020, and June 30, 2020, he was made to sit in the middle of the hallway for hours, while he was "vomiting profusely." ECF No. 1 at 3. He further states that on June 30, 2020, physicians at the University of Maryland Baltimore Washington Medical Center ("BWMC") ordered that he receive polyethylene glycol 17g/scoop powder and a colonoscopy "ASAP" but he

did not receive the medication until September 17, 2020, and the colonoscopy was never performed. *Id.* Pratt-El asserts that defendant Dr. Esphani is responsible for an incorrect diagnosis that caused him pain, excessive vomiting and diarrhea, and a prescription for the "wrong" medication. ECF No. 5 at 1. Pratt-El also asserts that Defendant Corizon "is only concerned with obtaining contractual money" and "systematically provides medical personnel who consistently provides [sic] insufficient medical treatment." *Id.* at 2-3.

Pratt-El states that while initially in the custody of Warden Gang and now Warden Friday, it was their responsibility to ensure he received proper medical care. ECF No. 1 at 3. Warden Gang "was informed" that Pratt-El was "experiencing complications" with the treatment provided by the JCI medical department and did not take action. ECF No. 5 at 1. After Friday became Warden, Pratt-El complained to Friday about "mistreatment" by the medical department and Friday failed to act. *Id.* at 2.

Corizon and Esphani have submitted the declaration of Dr. Vivien Dorsey who has been employed by Corizon Health, Inc. since January 2017, as the Utilization Management Medical Director. ECF No. 28-3 at 1. Pratt-El's medical records have also been provided for the time period from May 2020 through April 2021. ECF No. 28-4-28-8. [1]

Pratt-El has a history of chronic constipation. ECF No. 28-6 at 41. Dr. Dorsey describes chronic constipation as infrequent bowel movements or difficult passage of stool. ECF No. 28-3 at 3. She indicates that this condition can be caused by a number of factors to include insufficient fiber in the diet, insufficient water intake, lack of physical activity, endocrine problems such as diabetes, bowel disease, and certain medications. *Id.* Chronic idiopathic constipation is a common

---

[1] The Court refers Corizon counsel to the requirement that exhibits be tabbed and indexed. Counsel should provide a description of each document listed in the index. Simply describing each attachment as "Exhibit" does not meet the requirements of this rule. *See* Local Rule 105.5 (D. Md. 2021).

gastrointestinal disorder that refers to chronic constipation that is not caused by underlying illness or medication. *Id.* Dr. Dorsey does not indicate if Pratt-El's condition is idiopathic.

On May 11, 2020, Pratt-El complained at sick call of suffering gas and pain in his stomach and lower chest for the previous two and one half weeks. ECF No. 28-7 at 42. On May 18, 2020, Dr. Esphani renewed Pratt-El's chronic care medications without evaluating Pratt-El "due to covid 19 related lockdown/quarantine." ECF No. 28-4 at 4. She noted that an x-ray showed excessive fecal retention in his colon, and prescribed a weekly single dose laxative and stool softener as part of preventative medicine. *Id.*

On May 19, 2020, Pratt-El complained to Nurse Practitioner ("NP") Alenda at sick call of frequent gas build up and occasional burping and regurgitation after food intake. *Id.* at 8. Pratt-El was noted in "no apparent distress. Well nourished and well developed." *Id.* He was assessed with esophageal reflux and prescribed additional medications. *Id.* at 9.

On May 20, 2020, Pratt-El returned to sick call and was seen by Nurse Peace. *Id.* at 10. He complained of vomiting blood and was referred to the medical provider on site. He was seen by NP Alenda and complained of lower abdominal pain, and irregular bowel activity with mostly loose stool. *Id.* at 13. Alenda ordered an abdominal x-ray, intravenous fluids, Compazine to treat nausea and vomiting, and milk of magnesia. *Id.* at 13-14; ECF No. 28-3 at 4. The x-ray showed bowel gas and stool throughout the colon extending into the rectum. ECF No. 28-7 at 11. Pratt-El told Alenda that he had been drinking "jump" alcohol daily for about two weeks. ECF No. 28-4 at 13. Dr. Dorsey states that jump, or homemade alcohol, can cause abdominal pain, gastrointestinal distress, nausea, and vomiting. ECF No. 28-3 at 4.

On May 22, 2020, Pratt-El was seen again on sick call by Nurse Belebenma with complaints of vomiting and noted not to be in distress or discomfort. ECF No. 28-4 at 16. He was

advised to continue his medications. *Id.* On June 3, 2020, Dr. Esphani called Pratt-El "urgently" to the clinic for evaluation after her chart review of his clinic visits and lab results. *Id.* at 11, 23-25. Dr. Esphani ordered stool softeners and laxatives based on excessive fecal retention in Pratt-El's colon. *Id.* at 24.

Pratt-El was next seen over one month later on June 25, 2020, by Nurse Peace, complaining of nausea and abdominal pains. ECF No. 28-5 at 1. His abdomen was normal with soft bowel sounds and he was referred to a provider. *Id.* He was seen the next day by NP Alenda for abdominal discomfort. *Id.* at 2. He said the stool softeners did not help, but reported his appetite was good and he moved his bowels daily. He reported no longer drinking "jump" alcohol. He was assessed with and prescribed medications to treat constipation. *Id.* at 2-3.

On June 30, 2020, Pratt-El was seen by Dr. Esphani in chronic care complaining of abdominal discomfort, not eating well for months, chronic constipation, now persistent for the last one or more weeks, retching, burping, bloated belly, "water only" passage from his rectum and reported that laxatives and stool softeners were not helping. ECF No. 28-5 at 6. On examination, Pratt-El had mild tenderness in the periumbilical area and hypoactive bowel sounds. *Id.* at 7. He walked with difficulty and was in no apparent distress. *Id.* Dr. Esphani had Pratt-El transported to the BWMC emergency department that day for further evaluation for severe fecal impaction and abdominal pain. *Id.* at 6, 8-10.

In the emergency department, Pratt-El was diagnosed with generalized abdominal pain and constipation. ECF No. 28-7 at 23-38. A CT scan showed a moderate to large amount of stool in the bowel consistent with constipation, and no indication of a bowel obstruction in the gastrointestinal tract. *Id.* at 25. Pratt-El was prescribed polyethylene glycol, 17 grams by mouth for 7 days, *id.* at 38, and recommended for a colonoscopy. *Id.* at 23.

On July 1, 2020, Pratt-El was seen by Physician Assistant Carpenter who noted the results of Pratt-El's lab tests and CT scan were not concerning. ECF No. 28-5 at 13. Pratt-El did not report abdominal pain, nausea, vomiting or dizziness, but was experiencing some constipation and hardness in the abdomen. On examination, his abdomen was soft and nontender. *Id.* Pratt-El was instructed to follow up with the provider in three days to assess a request for a gastroenterologist consultation. *Id*. Pratt-El was prescribed Miralax. ECF No. 28-8 at 33; ECF 28-6 at 9. Dr. Dorsey notes that Miralax is the brand name for polyethylene glycol and it is a laxative. ECF No. 28-3 at 6.

That same day, July 1, 2020, Dr. Esphani requested a gastroenterology consultation for Pratt-El. ECF No. 28-5 at 15. On July 7, 2020, Dr. Esphani saw Pratt-El, noted she had not received a response to the colonoscopy request, and sent a follow up to the "urgent" request. ECF No. 28-5 at 20. Dr. Esphani also prescribed Golytely[2] and Compazine. *Id*. On July 7, 2020, Dr. Dorsey denied the consultation request, noting "medical necessity not demonstrated at this time. As alarm symptoms are not noted, consider treating the constipation, and reevaluating when clear." ECF No. 28-8 at 51. Dr. Dorsey expounds on her decision stating that Pratt-El did not have blood in his stool (which can indicate anal fissures, hemorrhoids, or colon cancer), inflammation in the abdomen or intestine, or radiation of abdominal pain. Further, an empty colon is needed to conduct the colonoscopy. ECF No. 28-3 at 7.

During Dr. Esphani's examination of Pratt-El on July 7, 2020, he became "rude, angry…belligerent" about wanting an immediate colonoscopy and other medical care and left the

---

[2] Golytely is used for bowel evacuation and cleaning prior to a gastrointestinal exam. *See* https://www.pdr.net/drug-summary/GoLytely-polyethylene-glycol-3350-potassium-chloride-sodium-bicarbonate-sodium-chloride-sodium-sulfate-1648.87.

clinic. ECF No. 28-5 at 22. Dr. Esphani documented a refusal to see Pratt-El again as she felt "threatened." *Id.*

Pratt-El was seen on July 9, 2020 by Nurse Aryiku and on July 15, 2020 by NP Alenda for complaints of constipation and discomfort in the left testicle when straining during stooling. ECF No. 28-5 at 24, ECF No. 28-6 at 2. He reported that he took the Golytely as ordered on July 7, 2020. ECF No. 28-6 at 2. The record does not indicate that Dr. Esphani saw Pratt-El again after July 7, 2020, however, on August 3, 2020, Dr. Esphani responded to Dr. Dorsey's denial of the colonoscopy, noting that Pratt-El had refractory constipation and because the CT "may not necessarily" show colon pathology the colonoscopy is needed. ECF No. 28-8 at 51; ECF No. 28-6 at 5. The record does not indicate that Dr. Esphani received a response.

On August 12, 2020, Pratt-El was seen by NP Awanga and was in no apparent distress. ECF No. 28-6 at 6-7. On September 4, 2020 Pratt-El was seen again by NP Awanga, reported mild constipation, and asked and received a 15 day renewal of Miralax. ECF No. 28-8 at 31; ECF 28-6 at 9. On September 11, 2020 a prescription for polyethylene glycol was requested, and approved on September 15, 2020 for a 15 day period. ECF No. 28-6 at 12, 16. On September 15, 2020, Pratt-El was seen by Nurse Nwabuwa for complaints of vomiting and presented with clammy skin and sweating profusely. He reported that he had a bowel movement with difficulty that morning, and was taking the Miralax, but not the Dulcolax. *Id.* at 14. Pratt-El was seen by NP Awanga on September 23, 2020, and September 29, 2020, with complaints of abdominal pain, upset stomach after meals, and occasional vomiting. *Id.* at 19, 22. On October 6, 2020, Dr. DeRosa ordered laboratory testing and an abdominal x-ray. *Id.* at 24-25. The x-ray showed no abnormal bowel gas or air-fluid levels, no evidence of obstruction, bowel dilation, or any abnormalities. ECF No. 28-7 at 21. Miralax was prescribed four months from October 6, 2020

through February 6, 2021.  ECF No. 28-6 at 26.  On December 8, 2020, Pratt-El saw Nurse Aryiku and requested a colonoscopy but was escorted away after he became verbally abusive.  ECF No. 28-6 at 31.   He was next seen by NP Alenda on December 15, 2020, and asked for a gastroenterology consultation and blood work related to his abdominal discomfort. *Id.* at 34.  On examination, he was not in apparent distress and his constipation was noted to be "controlled."  *Id.* at 35.  Laboratory testing was ordered, and the January 6, 2021 results were normal.  *Id.* at 34-35, 37-38.  On January 6, 2021, he reported that after not moving his bowels for more than a week prior to January 2, 2021, he had a bowel movement, and needed to renew the prescription for Miralax.  *Id.* at 37-39.  On January 20, 2021, Pratt-El was seen by Dr. El-Bedawi, reported improved bowel movements, no abdominal pain, diarrhea or vomiting, and his abdomen was soft and nontender.  *Id.* at 41-42.  Miralax was renewed from January 20, 2021 through May 20, 2021.  ECF No. 28-8 at 27.  On February 26, 2021, Pratt-El was seen by Nurse Adebayo on sick call for abdominal discomfort. ECF No. 28-6 at 43.  He believed he took too much Miralax for his chronic constipation. His abdomen was soft and nontender, and he denied diarrhea or vomiting.  He was observed by nursing staff for two hours, during which there was no vomiting observed.

On April 9, 2021, Pratt-El was seen by Dr. Williams in chronic care.  *Id.* at 46-47.  Dr. Williams renewed the Miralax and requested a colonoscopy for Pratt-El.  *Id.* at 47.  Dr. Dorsey again denied the colonoscopy noting there was no medical necessity and recommended an alternative treatment plan to test for blood in the stool.  ECF Nos. 28-8 at 56; 28-3 at 12.  Pratt-El did not appear for sick call on April 27, 2021 and 28, 2021.  ECF No. 28-7 at 7-8.

In his complaint, dated December 8, 2020, Pratt-El states that he filed a grievance as required by the prison's Administrative Remedy Procedure ("ARP") regarding his claims.  ECF No. 1 at 2.  He states that the grievance is pending.  *Id.*   In his supplement to the complaint, Pratt-

El provides documents pertaining to his grievance: on October 19, 2020 he filed an ARP complaint complaining of improper medical treatment, ECF No. 5-1 at 5; on October 27, 2020, Warden Friday requested and was granted an extension to respond with a new response date of December 2, 2020, *id.* at 3; on December 3, 2020, Pratt-El filed an appeal to the Commissioner of Corrections stating that the Warden failed to respond by the December 2, 2020 date, *id.* at 1; and the Commissioner requested and was granted an extension to respond to the appeal with a new response date of February 4, 2021, ECF No. 7.

Defendants provide Warden Friday's response to the grievance dated January 26, 2021. ECF No. 31-5 at 4. The Commissioner of Corrections responded to Pratt-El's appeal on March 17, 2021, stating that his appeal is meritorious "in part in that the warden failed to respond to your request within the established timeframe…" but then denies his claim that he received inadequate medical care. ECF No. 31-5 at 7. There is no record that Pratt-El filed a grievance with the Inmate Grievance Office after receiving the Commissioner's decision. ECF No. 31-7.

## Standard of Review

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). The court may "consider documents attached to the complaint, *see* Fed.R.Civ.P. 10(c), as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic[.]" *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) (citation omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient

to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247-48 (emphasis in original). The Court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (per curiam) (citation and quotation omitted), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. NC. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015). At the same time, the Court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)).

Defendants' Motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56(a). A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Conversion of a motion to dismiss to one for summary judgment under Rule 12(d) is permissible

where a plaintiff has "actual notice" that the motion may be disposed of as one for summary judgment. *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260-61 (4th Cir. 1998). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for a court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; a court "does not have an obligation to notify parties of the obvious." *Laughlin*, 149 F.3d at 261. Because Defendants filed a motion styled as a motion to dismiss, or in the alternative, for summary judgment, Pratt-El was on notice that the Court could treat the Motion as one for summary judgment and rule on that basis.

## Discussion

### I.   Defendants Warden Gang and Friday

Defendants Gang and Friday contend that Pratt-El's complaint is subject to dismissal pursuant to the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e, because his claims have not been properly presented through the administrative remedy procedure. ECF No. 31 at 19-23. The PLRA provides in pertinent part that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

A claim that has not been exhausted pursuant to the PLRA may not be considered by this court. *See Jones v. Bock*, 549 U.S. 199, 220 (2007). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules[.]" *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). An inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a). The Supreme Court has stated that an administrative remedy is available if it is "'capable of use' to obtain 'some relief for the action complained of.'" *Ross v. Blake*, 578 U.S. 1174, 136 S.

10

Ct. 1850, 1859 (2016) (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)). Thus, an inmate must complete the prison's internal appeals process, if possible, before bringing suit. *See Chase v. Peay*, 286 F. Supp. 2d 523, 529-30 (D. Md. 2003). Exhaustion is also required even where the specific relief sought is not attainable through resort to the administrative remedy procedure. *See Booth*, 532 U.S. at 741. As a prisoner, plaintiff is subject to the strict requirements of the exhaustion provisions. *See Porter v. Nussle*, 534 U.S. 516, 528 (2002) (noting that no distinction is made with respect to exhaustion requirements between suits alleging unconstitutional conditions and suits alleging unconstitutional conduct).

To pursue a grievance, a prisoner confined in a Maryland prison may file a grievance with the Inmate Grievance Office ("IGO") against any DOC official or employee. Md. Code Ann., Corr. Servs. § 10-206(a). However, if the prison has a grievance procedure that is approved by the IGO, the prisoner must first follow the institutional Administrative Remedy Procedure ("ARP") process, before filing a grievance with the IGO. *See id.* § 10-206(b). The Maryland Department of Public Safety and Correctional Services has made an ARP available to Maryland State prisoners for "inmate complaint resolution." *See* generally *id.* §§ 10-201 *et seq.*; Code of Maryland Regulations ("COMAR") 12.07.01.01B(1) (defining ARP). Thus, before filing a grievance with the IGO, a prisoner is required, among other things, to make an initial request for an administrative remedy with the Warden. *Id.* 12.07.01.04(B)(9)(a). If an ARP is filed and denied, the prisoner may appeal the denial within 30 days to the Commissioner of Correction.

If the Commissioner of Correction denies the appeal, the prisoner may file a grievance with the IGO, also within 30 days. C.S. § 10-206(a); C.S. § 10-210; COMAR 12.07.01.05B. The prisoner must include in the grievance copies of the initial request or administrative remedy, the Warden's response to that request, a copy of the ARP appeal filed with the Commissioner of

11

Correction, and a copy of the Commissioner's response. COMAR 12.07.01.04(B)(9)(a). If the grievance is determined to be "wholly lacking in merit on its face," the IGO may dismiss it without a hearing. C.S. § 10-207(b)(1); *see* COMAR 12.07.01.07B. An order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review. C.S. § 10-207(b)(2)(ii).

Here, it is clear that Pratt-El did not timely and properly exhaust the grievance process prior to filing his complaint in this Court. The complaint is dated December 8, 2020 and was received by the Court on December 28, 2020. ECF No. 1. The complaint itself states that the grievance is "pending." ECF No. 1 at 2. Pratt-El filed his grievance with the Warden on October 19, 2020 and then his appeal to the Commissioner on December 3, 2020, when he did not receive a response to his grievance. ECF No. 5-1 at 1, 6. The Commissioner then requested and was granted an extension to respond to the appeal with a response date of February 4, 2021. ECF No. 7. Pratt-El filed his complaint while the appeal was pending. ECF No. 31-6 at 2.

Exhaustion of administrative remedies must take place before the complaint is filed. In *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999), the court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court. . . . The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." *See Kitchen v. Ickes*, Civil Action No. DKC-14-2022, 2015 WL 4378159, at *8 (D. Md. July 14, 2015); *see also Blackburn v. S. Carolina*, No. C A 006-2011-PMD-BM, 2009 WL 632542, at *1 (D.S.C. Mar. 10, 2009) *aff'd*, 404 F. App'x 810 (4th Cir. 2010); *Miller v. McConneha, et al*, JKB-15-1349, 2015 WL 6727547, at *3-4 (D. Md. November 11, 2015).

Ordinarily a prisoner must follow the required procedural steps in order to exhaust his administrative remedies. *Moore v. Bennette*, 517 F.3d 717, 725, 729 (4th Cir. 2008); *see Langford v. Couch*, 50 F. Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he. . . . PLRA amendment made clear that

exhaustion is now mandatory."). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Id.* at 93 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original). But the Court is "obligated to ensure that any defects in [administrative] exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

Here, nothing reflects that Pratt-El exhausted administrative remedies prior to filing the complaint or was prevented from so doing. The claims are, therefore, unexhausted and the claims will be dismissed against Defendants Gang and Friday without prejudice.

**II.     Corizon**

Corizon asserts that it is entitled to summary judgment because Pratt-El fails to adequately allege that any policy, practice, or custom led to a violation of his Eighth Amendment rights and further claims that Corizon is liable due to the acts of their employees. ECF No. 28-1 at 16-17. [3] The doctrine of respondeat superior does not apply to claims asserting constitutional deprivations brought pursuant to 42 U.S.C. § 1983. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983). As in this case, a private corporation that steps into the shoes of a state actor cannot be held liable for a § 1983 claim solely upon a theory of respondeat superior. *See Austin v. Paramount Parks, Inc.,* 195 F.3d 715, 727-28 (4th Cir. 1999);

---

[3] Corizon Defendants also note that if Pratt-El intended to bring a state law medical malpractice claim, he failed to comply with mandatory prerequisites prior to filing suit. ECF No. 28-1 at 16. The Court construes Pratt-El's claims as arising solely under the Eighth Amendment and declines to address this point.

13

*Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982); *Clark v. Maryland Dep't of Pub. Safety and Corr. Servs.,* 316 Fed. Appx. 279, 282 (4th Cir. 2009). Instead, liability to a private entity attaches only when a constitutional deprivation results from the entity having implemented an unconstitutional policy, custom, or practice. *See Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 690 (1978). Therefore, to proceed, Pratt-El must identify some evidence that he was denied medical treatment pursuant to a policy, custom, or practice and it proximately caused a violation of his constitutional rights. *Monell*, 436 U.S. at 690; *see also Jordan ex rel Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994).

Pratt-El summarily asserts that Defendant Corizon "is only concerned with obtaining contractual money" and "systematically provides medical personnel who consistently provide[s] insufficient medical treatment." ECF No. 5 at 2-3. Pratt-El presents no evidence to support his generalized allegations, and does not adequately allege that Corizon has a policy, custom, or practice in place. Summary judgment is granted in Corizon's favor on this basis alone.

**III. Dr. Esphani**

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see also Hope v. Pelzer*, 536 U.S. 730, 737 (2002); *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)); *accord Anderson v. Kingsley*, 877 F.3d 539, 543 (4th Cir. 2017).

To state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants, or their failure to act, amounted to deliberate

indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Anderson*, 877 F.3d at 543. Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure it was available. *See Farmer v. Brennan*, 511 U.S. 825, 834-7 (1994); *see also Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209-10 (4th Cir. 2017); *King,* 825 F.3d at 218; *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). "A 'serious medical need' is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Heyer*, 849 F.3d at 210 (quoting *Iko*, 535 F.3d at 241); *see also Scinto*, 841 F.3d at 228 (failure to provide diabetic inmate with insulin where physician acknowledged it was required is evidence of objectively serious medical need). Proof of an objectively serious medical condition, however, does not end the inquiry.

After a serious medical need is established, a successful claim requires proof that the defendants were subjectively reckless in treating or failing to treat the serious medical condition. *See Farmer*, 511 U.S. at 839-40. "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). The subjective knowledge requirement can be met through direct evidence of actual knowledge or through circumstantial evidence tending to establish such knowledge, including evidence "that a prison

official knew of a substantial risk from the very fact that the risk was obvious." *Scinto*, 841 F.3d at 226 (quoting *Farmer*, 511 U.S. at 842).

Pratt-El asserts that Dr. Esphani is responsible for a misdiagnosis that caused him to suffer pain, excessive vomiting and diarrhea, and a prescription for the wrong medication. ECF No. 5 at 1. Pratt-El does not state what he believes to be the wrong diagnosis, or the wrong medication. He states that on several occasions to include May 20, 2020, May 22, 2020, June 3, 2020, June 25, 2020, and June 30, 2020, he was made to sit in the middle of the hallway, for hours, while he was "vomiting profusely." ECF No. 1 at 3. The medical records indicate that on each of these dates, Pratt-El received medical care, including examinations, medications, x-rays, physician assessment, and transport to the BWMC for further evaluation. Pratt-El was also prescribed the medication recommended by the emergency room physician immediately after his discharge.

Dr. Esphani does not concede that Pratt-El suffers from a serious medical need, however, the medical records clearly indicate that he does. ECF No. 28-1 at 18. The medical records also indicate the extent of Dr. Esphani's medical care including: renewal of chronic care medications; review of x-rays, lab results, and clinic visits; prescribing laxatives and stool softeners as preventative medicine; ordering transport for emergency hospital care; and consistently following up on discharge instructions for medication and a colonoscopy. Even after Dr. Esphani refused to continue seeing Pratt-El due to his conduct, she followed up to try to get the colonoscopy approved. The undisputed evidence indicates that Dr. Esphani did not have the authority to approve the consultation; rather, Dr. Dorsey appeared empowered to make this decision. The record indicates that Dr. Esphani was not further involved in Pratt-El's care after this point. Further, the medical records submitted through April 2021, indicate that Pratt-El's medical issues were under control.

Viewing the evidence in the light most favorable to Pratt-El, the Court concludes that he has not presented that Dr. Esphani engaged in deliberate indifference to his serious medical needs. Accordingly, the Court finds that there is no genuine issue of material fact in dispute and Dr. Esphani is entitled to summary judgment in her favor.

**Conclusion**

For the foregoing reasons Defendant Wardens Friday and Gang's Motion, construed as a motion to dismiss, is granted.  Defendant Corizon and Esphani's Motion, construed as a motion for summary judgment, is also granted.  A separate Order follows.


<u>February 22, 2022</u>   　　　　　　　　　　_____/s/_____
Date   　　　　　　　　　　　　　　　　　　　Stephanie A. Gallagher
   　　　　　　　　　　　　　　　　　　　　　United States District Judge